# In the United States Court of Federal Claims

No. 10-844 C

(E-Filed Under Seal: March 31, 2011)[1]
(E-Filed with Redactions: April 8, 2011)

|   |   |   |
|---|---|---|
| GLENN DEFENSE MARINE (ASIA), PTE LTD. | ) ) ) ) ) ) ) ) ) ) ) ) | Pre-Award Bid Protest; Sufficient Information About Quantities Given to Bidders; FAR 15.404-1(g) Irrelevant to Dispute |
| Plaintiff, | | |
| v. | | |
| THE UNITED STATES, | | |
| Defendant. | | |

David Scott Black, McLean, VA, for plaintiff; Jacob W. Scott and Gregory R. Hallmark, McLean, VA, of counsel.

David D'Alessandris, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant; Mark W. Golden, counsel for the United States Department of the Navy, Fleet and Industrial Supply Center, Detachment Singapore, of counsel on briefs; Michael D. Rossiter, Associate Counsel, Department of the Navy Office of the General Counsel, Naval Supply Systems Command, of counsel at oral argument.

OPINION

HEWITT, Chief Judge

---

[1] This Opinion was filed under seal on March 31, 2011, Docket Number (Dkt. No.) 32. The court instructed the parties to file any requests for the redaction of protected material on or before Friday, April 8, 2011 at 12:00 noon Eastern Daylight Time. In response to the court's directive of March 31, 2011, the parties filed a joint motion to redact. See Consent Motion for Redaction, Dkt. No. 35. The parties' Consent Motion for Redaction is GRANTED.

This is a pre-award bid protest brought by Glenn Defense Marine (Asia), Pte Ltd. (Glenn Defense, GDMA or plaintiff), a bidder in Solicitation No. N62649-09-R-0041 (Solicitation, Request for Proposals or RFP) issued by the United States government acting through the United States Department of the Navy, Fleet and Industrial Supply Center, Yokosuka, Japan (the Navy, the agency, the government or defendant).

Before the court are plaintiff's Complaint (Compl.), filed December 8, 2010, Docket Number (Dkt. No.) 1; the Administrative Record (AR), filed December 22, 2010; Plaintiff's Motion for Judgment on the Administrative Record (plaintiff's Motion or Pl.'s Mot.), filed January 14, 2011, Dkt. No. 16; Plaintiff's Memorandum in Support of Motion for Judgment on the Administrative Record (plaintiff's Memorandum or Pl.'s Mem.), filed January 14, 2011, Dkt. No. 16-1; Defendant's Amended Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record[2] (defendant's Motion or Def.'s Mot.), filed February 18, 2011, Dkt. No. 20; Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record, and Plaintiff's Response to Defendant's Cross-Motion for Judgment on the Administrative Record (plaintiff's Reply or Pl.'s Reply), filed February 16, 2011, Dkt. No. 18; and Defendant's Reply to Plaintiff's Response to Defendant's Cross-Motion for Judgment on the Administrative Record (defendant's Reply or Def.'s Reply), filed February 23, 2011, Dkt. No. 21.

---

[2]In its original Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record (Def.'s Original Mot.), filed February 2, 2011, Dkt. No. 17, defendant consistently referred to Amendment 0027 of Solicitation No. N62649-09-R-0041 (the Solicitation) in its statement of the facts and referred to Amendment 0029 of the Solicitation in its argument. See Def.'s Original Mot. 4-8, 11-21. The court ordered defendant to file an amended brief that contains citations to Amendment 0029 rather than Amendment 0027 in its statement of the facts. Order of Feb. 16, 2011, Dkt. No. 19, at 1. Defendant filed an amended brief with citations to Amendment 29 in its statement of the facts. See Defendant's Amended Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record (defendant's Motion or Def.'s Mot.), Dkt. No. 20, at 4-9. In its amended brief, defendant explained that "Amendment 29 is identical to Amendment 27 with the exception of the date of submission of bids (modified by Amendment 28) and a notification of the protest before GAO (Amendment 29). However, Amendment 29 does not include the price schedules (Tab 28.01) included in Amendment 27." Def.'s Mot. 1 n.1. All of the citations to defendant's Motion in this Opinion are to defendant's amended Motion at docket number 20.

The court held oral argument at the National Courts Building on Wednesday, March 2, 2011 at 10:00 a.m. Eastern Standard Time.[3]

Plaintiff contends that a portion[4] of the price evaluation methodology set forth the Solicitation is illegal, arbitrary and capricious because "the Agency is excluding essential information that bidders need to intelligently prepare firm-fixed prices and that is necessary to ensure the Agency has a common basis for evaluating price proposals," Pl.'s Mem. 25, and requests that the court issue a permanent injunction enjoining defendant from awarding a contract under the Solicitation in its current form, Pl.'s Mot. 1. Defendant contends that Glenn Defense fails to establish that the Solicitation is arbitrary or capricious or that it does not comply with the applicable statutes or regulations. Def.'s Mot. 1. The court agrees with defendant: the disputed portion of the price methodology established by the Solicitation is not arbitrary or capricious or not in accordance with law.

I.   Background

On November 3, 2009 the United States Fleet and Industrial Supply Center, Yokosuka, Japan (FISC Yokosuka) issued Solicitation No. N62649-09-R-0041 for maritime husbanding support[5] for United States government ships visiting ports and operating in four regions within the western Pacific Ocean and Indian Ocean. AR Tab 1, at 1, 63. Following multiple amendments, FISC Yokosuka issued the final amendment to the Solicitation, Amendment 0029, on August 16, 2010. AR Tab 30, at 11482.

The Solicitation contemplates the award of four contracts, one for each of the following geographic regions: South Asia, Southeast Asia, Australia and the Pacific

---

[3]The oral argument held on Wednesday, March 2, 2011 was recorded by the court's Electronic Digital Recording (EDR) system. The times noted in citations to the oral argument refer to the EDR record of the oral argument.

[4]The parties filed a stipulation of dismissal for Count I of plaintiff's Complaint. Stipulation of Dismissal in Part with Prejudice (Stipulation of Dismissal), Dkt. No. 31; see infra note 12.

[5]Husbanding "[s]ervices include, but are not limited to, management services, breasting barges, brows, sewage removal and disposal, communications, fenders, force protection, material handling, interpreters, oil booms, oil waste disposal, potable water, shore power, transportation, tugs, water taxis, port tariff items, planning support, and logistics support for Operations Other than War (OOTW) for humanitarian assistance and disaster relief." AR Tab 32.22, at 13799; see AR Tab 30, at 11489-90 (listing various services and supplies).

Islands, and East Asia.[6]  AR Tab 30, at 11486-87.  Each awarded contract will include a twelve-month base period beginning thirty days after the award of the contract, with four one-year option periods.  AR Tab 30, at 11493.  The minimum quantity for each contract is $100,000 worth of orders, and the maximum quantity for each contract is the sum of the quoted prices for the base year plus the four option years.  AR Tab 30, at 11492-93.  Offerors are required to submit separate offers for each region in which they are interested, and the agency will evaluate proposals by region.  AR Tab 30, at 11486.  The Navy received [***] proposals in response to the Solicitation.  AR Tab 38.04, at 17627.  [***].

The Solicitation subdivides the four geographic regions into ninety-nine "lots," with each lot representing an individual port or a group of several ports in a single country.  AR Tab 30, at 11487-89.  The Solicitation identifies forty-six of the lots as "targeted lots."  See AR Tab 30, at 11487-89.  Out of the remaining lots, thirty are "non-targeted."[7]  See AR Tab 30, at 11487-89.  A "targeted lot" designates a "major port" or group of "major ports" in a country.  See AR Tab 30, at 11486-89.  "Targeted lots include ports in which historical information indicates a greater likelihood the Navy will make a port visit than the ports included in the non-targeted lots."  Def.'s Mot. 7 (citing AR Tabs 1.02-1.05, at 465-1521); Oral Argument, Argument of David Black, at 10:05:05-10:05:10 (agreeing with defendant's definitions of targeted and non-targeted lots).

Each of the four awarded contracts will be "Firm-Fixed-Price Indefinite-Delivery, Indefinite-Quantity (IDIQ)" contracts, under which "[t]he [husbanding services] Contractor agrees to furnish the services or supplies at the fixed price listed in the [price] schedules."  AR Tab 30, at 11492-93.  The Navy uses a set of price schedules to identify its potential needs for each lot.  See AR Tab 30, at 11491-92; see generally AR Tab 28.01, at 11339-447.[8]  The Solicitation includes a separate price schedule for each lot.

---

[6] South Asia is labeled "Region 1" and covers seven countries and four major ports.  AR Tab 30, at 11486.  Southeast Asia is labeled "Region 2" and covers twelve countries and twenty major ports.  AR Tab 30, at 11486.  Australia and the Pacific Islands is labeled "Region 3" and covers seventeen countries and eight major ports.  AR Tab 30, at 11486-87.  East Asia is labeled "Region 4" and covers four countries and twelve major ports.  AR Tab 30, at 11487.

[7] Seventeen of the remaining lots are "reserved," and six of the lots are intended for Operations Other than War (OOTW).  See AR Tab 30, at 11487-89.  Plaintiff has stated that the reserved lots and the OOTW lots do not "play[] a role in GDMA's protest."  Pl.'s Mem. 9.

[8] The price schedules for each lot were provided as Attachment 2 to the Solicitation.  See AR Tab 30, at 11640, 11643; see also AR Tab 28.01, at 11339-477.  In the Administrative Record, the most recent version of the Solicitation (Amendment 0029) refers to, but does not

continue...

4

See AR Tab 28.01, at 11339-477. Each price schedule is identified by lot number, country and port(s) included in the lot, and each price schedule contains the names and line item numbers for thirty-three basic categories of supplies and services. See AR Tab 28.01, at 11339-477; see also AR Tab 30, at 11489-90 (listing the thirty-three categories of supplies and services, each associated with a heading and line item number).[9] Some lots include requirements for supplies and services in all thirty-three categories, and some lots do not. Compare AR Tab 28.01, at 11400-01 (showing that lot 41, Thailand, Sattahip, Husbanding Services and OOTW, includes requirements for all thirty-three categories), with AR Tab 28.01, at 11389-90 (showing that lot 35, Malaysia, All Other Ports, Husbanding Services and OOTW, does not include any requirements for line item thirteen, Camels, Breasting, and Fendering Barges, and for line item fourteen, Landing Barges).

The price schedules "include an estimated quantity column [(labeled Est Qty)] for each of the supplies and services for which offerors are required to provide a price as part of their price proposal for the lot." AR Tab 38.04, at 17627; see AR Tab 28.01, at 11339-477. The estimated quantity column contains a quantity for some, but not all, of the line

---

[8]...continue
contain, Attachment 2. See AR Tab 30, at 11643 (directing bidders to "[s]ee separate attached regional spreadsheets" for the price schedules). Because Attachment 2 to Amendment 0027 contains the most recent version of the price schedules and both parties cite to those price schedules in their briefs, see Pl.'s Mem. 10; Def.'s Mot. 5, the court cites to Attachment 2 of Amendment 27 when referring to the price schedules.

[9]These categories include, for example, trash removal, fresh potable water and tugs. See AR Tab 28.01, at 11339-477. Each category is assigned a line item number that is used consistently throughout the price schedules and the Solicitation. For example, trash removal is assigned line item number XX03, fresh potable water is assigned line item number XX06 and tugs is assigned line item number XX08. AR Tab 30, at 11489-90; see AR Tab 28.01, at 11339-477. The "XX" in the line item numbers is a placeholder for the lot number. For example, for lot 41, Thailand, Sattahip, Husbanding Services and OOTW, the line item number for trash removal becomes 4103. See AR Tab 28.01, at 11400. In the price schedules, the line item numbers contain a succeeding two-letter code, which identifies sub-categories of supplies and services that correspond to specific descriptions in the performance work statement of the Solicitation. See AR Tab 28.01, at 11339-477; see also AR Tab 30, at 11503-27. For example, within the transportation service category (XX11), the price schedule for lot 41 contains the following four sub-categories and line item numbers: "Bus, 40 Person Capacity, Minimum = 4 Hours" at line item number 4111AA, "Vehicle, Group 'B' – Medium-Size Sedan with driver" at line item number 4111AB, "Vehicle, Group 'M' – 9 Passenger Van with driver" at line item number 4111AD and "Vehicle, Light Truck with Driver," at line item number 4111AI. See AR Tab 28.01, at 11339-477; see also AR Tab 30, at 11511-15.

5

items listed in the price schedules.  See AR Tab 28.01, at 11339-477.  The numerical values included in the estimated quantity column are based on historical port visit data provided as Attachment 3 to the Solicitation.[10]  AR Tab 11, at 5910; see AR Tabs 1.02-1.05, at 465-1521.  "The historical information describes port visits by U.S. Navy vessels in the Western Pacific and Indian Ocean for 2 1/2 years (FY07, FY08, and the first half of FY09) and is provided . . . as [an] indication of the type and frequency of port visits, and the supplies and services expected to be required in the future."  AR Tab 38.04, at 17622; see AR Tab 30, at 11492.  The remaining line items listed in the price schedules that do not contain a numeric quantity are labeled as "No Estimate."  See AR Tab 28.01, at 11339-477.  "'No estimate' indicates that the [g]overnment does not have information indicating there was a demand for the item during the period covered by the historical information at the [S]olicitation's Attachment 3 but recognizes that there may be a requirement for the item during the term of the contract."  AR Tab 11, at 5910; AR Tab 38.04, at 17623 ("The schedules at the RFP's attachment 2 include the phrase 'no estimate' in the estimated quantity column for supplies and services that U.S. Navy vessels may need under the contracts to be awarded from the [S]olicitation but which are not included in the historical data at the RFP's attachment 3.").

The Solicitation requires each offeror to provide unit prices for all line items on each of the price schedules that are included in the region(s) for which the offeror chooses to submit offers, except where the items are identified as port tariff (PT) prices, to be determined (TBD) prices or not separately priced (NSP).[11]  AR Tab 11, at 5910; AR

---

[10]The historical port visit data consists of spreadsheets, one per port, listing the line items and quantities ordered for each visit to that port by a Navy vessel from fiscal year 2007 through the first half of fiscal year 2009.  See AR Tabs 1.02-1.05, at 465-1521.  The spreadsheets also indicate the size class of the vessel that visited the port and the number of days the vessel stayed at the port, as well as the mooring configuration (either pierside or anchorage).  See AR Tabs 1.02-1.05, at 465-1521; see also AR Tab 30, at 11735.

The spreadsheets containing the historical port visit data were provided as Attachment 3 to the Solicitation.  See AR Tab 30, at 11640, 11643; see also AR Tabs 1.02-1.05, at 465-1521.  In the Administrative Record, the most recent version of the Solicitation (Amendment 0029) refers to, but does not contain, Attachment 3.  See AR Tab 30, at 11643 (directing bidders to "[s]ee attached historical data files").  Because Attachment 3 to the original Solicitation contains the most recent version of the historical data and the parties both cite to these historical data spreadsheets in their briefs, see Pl.'s Mem. 13; Def.'s Mot. 6, the court cites to Attachment 3 of the original Solicitation when referring to the price schedules.

[11]PT and TBD items are "items whose price cannot be determined in advance and/or depend on the level of usage.  Prices for these items cannot, therefore, be pre-priced."  AR Tab

continue...

Tab 30, at 11487, 11639. Offerors must include a unit price for "[s]ervices with an estimated quantity of 'No Estimate.'" AR Tab 30, at 11490. Out of the total 4,863 line items in the pricing schedules for the targeted lots, 2,994 have no estimated quantity. Pl.'s Reply 11 (citing AR Tab 28.01, at 11339-447); Oral Argument, Argument of David D'Alessandris, at 10:02:45-10:02:54 (stating that defendant believes the numbers to be "substantially correct").

The Solicitation sets out a cost/technical trade-off evaluation process as described in FAR Part 15.101-1. AR Tab 30, at 11638. In selecting the awardee for each region, the government will compare three evaluation factors in the following descending order of importance: Technical Approach, Past Performance and Price. AR Tab 30, at 11638. "The non-price factors, when combined, are significantly more important than price." AR Tab 30, at 11638. The Solicitation creates a bifurcated price evaluation methodology, with one method for evaluating targeted lots and another for evaluating non-targeted lots. See AR Tab 30, at 11639-40. Because plaintiff is protesting the Navy's price evaluation methodology for only the targeted lots, the court limits its discussion of the Navy's price evaluation methodologies to the method it will use for the targeted lots.[12]

---

[11]...continue
30, at 11632. The Solicitation provides that PT items will be reimbursed at cost. AR Tab 30, at 11632. For TBD items, a FISC Contracting Officer may "determine if a quoted price is fair and reasonable." AR Tab 30, at 11655. The costs of NSP line items (all under line item number XX32, Cost Reporting), are to be included in the husbanding services fee in line item numbers XX01 and XX02. AR Tab 30, at 11654. The Solicitation provides that PT and TBD are not included in the "total evaluated price" that FISC will use for best-value determination purposes. AR Tab 30, at 11639. Similarly, NSP items are not included in the price evaluation because offerors are not required to provide prices for those items. See AR Tab 28.01, at 11339-447.

[12]In its Motion for Judgment on the Administrative Record, plaintiff protested the Navy's price evaluation methodology for both targeted and non-targeted lots. Pl.'s Mot. 1; see Pl.'s Mem. 19-24. In Count I of plaintiff's Complaint, plaintiff requested that the court issue a "permanent injunction to prevent Defendant from making an award under the RFP without properly conducting a price reasonableness evaluation of offeror's [sic] prices for non-targeted lots." Compl. ¶ 35. Plaintiff argued that "[t]he Solicitation's price reasonableness evaluation methodology for non-targeted lots is arbitrary and capricious because it fails to include any evaluation of the cost to the government for 316 line items." Pl.'s Mem. 19. Defendant contended that "[t]he Solicitation clearly provides for price analysis of all line items for non-targeted lots." Def.'s Mot. 11.

At oral argument, David D'Alessandris, counsel for defendant, stated, "It is my understanding that the ongoing evaluation by the Navy that has been proceeding . . . at the same
<span style="float:right">continue...</span>

The Solicitation directs the agency to calculate a total evaluated price for each offeror to determine which offeror presents the best value.[13]  AR Tab 30, at 11639.  The total evaluated price is derived from the offeror's prices for the targeted lots only.  AR Tab 30, at 11639.  To calculate the total evaluated price, the Solicitation directs the agency to multiply the offeror's proposed prices by the quantities set forth in a series of sample logistical requirements (LOGREQs).  AR Tab 30, at 11639; AR Tab 38.04, at

---

[12]...continue
time that this bid protest [has been] going on, that the Navy has done an analysis, that they did do a . . . price reasonableness analysis of every line item whether or not it's in the sample LOGREQ for the non-targeted lots."  Oral Argument at 11:51:41-11:52:07.  David Black, counsel for plaintiff, responded, "You've just heard [that] they've made an affirmative statement . . . that they understand their obligation is to evaluate all the line items in the non-targeted lots.  In a sense, that's the relief we've been . . . requesting all along."  Oral Argument at 11:52:23-11:52:36.  Michael Rossiter, counsel for the Navy, confirmed, "I think that Mr. Black's interpretation, or the interpretation that he wants of the Solicitation, is our interpretation."  Oral Argument at 11:57:43-11:57:54.  The court, recognizing the similarity in the parties' positions, stated, "Sounds . . . like we might have a settlement here for the non-targeted [lots]."  Oral Argument at 11:52:49-11:52:54.

On March 31, 2011, the parties filed their joint Stipulation of Dismissal in Part with Prejudice with the court.  The parties stated that they "have agreed and hereby stipulate that Count I of plaintiff's complaint is dismissed with prejudice."  Stipulation of Dismissal 1.

[13]Specifically, for targeted lots, the Solicitation provides as follows:

The total EVALUATED price will be used in the trade-off process among price and non-price factors for purposes of determining the 'best value' offeror.  The total evaluated price will be calculated by applying the offerors' proposed unit prices for 'targeted lots' to a sample of logistical requirements (LOGREQs) based upon historical port visit data for those 'targeted lots.'  The sample LOGREQs to be employed for price evaluation of the targeted lots have been constructed based on the historical data provided as Attachment 3 to the schedule.  The sample LOGREQs for 'targeted lots' may not include all the line items on the corresponding price schedule.  Line items not included in the sample LOGREQs will not be part of the total EVALUATED price, but will be reviewed for fair and reasonable pricing.  The 'targeted lots' are identified in the Performance Work Statement.  For evaluation and award purposes, the evaluated prices will NOT include port tariff items, TBD items, provisions, fuel, or incidentals.  The quantities in this sample LOGREQ are for proposal evaluation purposes only and are not construed as a guarantee of the quantities to be ordered under this contract.

AR Tab 30, at 11639.

8

17623 ("[P]rice evaluation for the targeted lots will be accomplished on a lot by lot basis by applying the prices that an offeror provides for the supplies and services listed on the applicable [price] schedule at RFP attachment 2 to a sample [LOGREQ].")

LOGREQs are spreadsheets containing an estimated quantity for various line items, which, like the price schedules used by the offerors to bid on prices, are based on historical data concerning past port visits.  See AR Tab 30, at 11639.  "The Sample LOGREQs are specific by ship class and mooring configuration,[14] but are not specific by port."  AR Tab 30, at 11735.  The government created thirteen separate sample LOGREQs for nearly all ship classes and mooring configurations.[15]  AR Tab 30, at 11735.  The Navy did not disclose to offerors the actual sample LOGREQs (targeted LOGREQs) it intends to use to calculate the evaluated price for the targeted lots.  However, the government did provide to offerors the historical data showing port visits for all ship classes from fiscal year 2007 through the first half of fiscal year 2009, see AR Tabs 1.02-1.05, at 465-1521, as well as an explanation of the methodology by which the targeted LOGREQs were created, AR Tab 30, at 11735-741.  According to the Solicitation, the process used to create the actual targeted LOGREQs involves identifying the historical information for a specific ship class and mooring configuration and identifying supplies and services ordered during that visit that meet any one of the following three characteristics:

> 1) Commonality:  Orders for the same supply or service appear in a high percentage of the port visits;
> 2) Criticality:  There is a high risk that unavailability of the supply or service would cause significant disruption to the port visit; or
> 3) Cost:  Historical data shows that the cost of the service comprises a significant portion of the overall port visit or; for previously non-priced items, the Government may have had difficulty determining, for actual port visits in the past, that prices paid for the services were fair and reasonable.

---

[14]The Solicitation covers port visits by vessels of size Classes I through V.  See AR Tab 30, at 11642-43.  Vessel size classes are rough indicators of ship and crew size.  See AR Tab 30, at 11642-43.  For example, Class I vessels range in length from 82 feet to 560 feet, with crews of 21 to 166.  AR Tab 30, at 11642-43.  Class V vessels exceed 1,000 feet and carry crews of up to 6,275.  AR Tab 30, at 11643.  The Solicitation covers port visits by vessels under two mooring configurations:  pierside and anchorage.  See AR Tab 30, at 11735.

[15]Because there was no historical data for Class 1A visits at anchorage, the Navy did not create a sample LOGREQ for Class IA.  AR Tab 30, at 11735.

AR Tab 30, at 11735.  Quantities for each supply or service included in the sample LOGREQ were "determined by calculating an average daily rate for the supply or service and then multiplying it by the number of days included in the port visit for the Sample LOGREQ."  AR Tab 30, at 11735.  The explanation of the methodology also included a sample LOGREQ,[16] AR Tab 30, at 11737-41, although the agency noted that the "Sample LOGREQ above is NOT the actual Sample LOGREQs to be used for price evaluation," AR Tab 30, at 11741.

The LOGREQs for targeted lots "may not include all the line items in the corresponding price schedule."  AR Tab 30, at 11639.  "Items that are included in the sample LOGREQ will be included as part of the RFP's 'total evaluated price' but items that are not included in the sample LOGREQ will only be evaluated to determine whether they are offered at a fair and reasonable price."  AR Tab 38.04, at 17623-24; AR Tab 30, at 11639.

II.     Legal Standards

    A.     Bid Protest Standard of Review

The Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), 28 U.S.C. § 1491(b)(1) (2006), confers jurisdiction on this court:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  The court may "entertain such an action without regard to whether suit is instituted before or after the contract is awarded."  Id.

"A bid protest proceeds in two steps."  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law.  Id.  The second step is to determine whether the error was prejudicial.  Id.

---

[16]The sample LOGREQ is based on a sample of historical data from five port visits by Class II vessels with pierside mooring.  See AR Tab 30, at 11735-41.

1.      The Plaintiff Must Establish Error

The court reviews a bid protest action under the standards set out in the Administrative Procedure Act (APA), 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4); NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004).  The APA provides that an agency's decision is to be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); see Bannum, 404 F.3d at 1351; Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa), 238 F.3d 1324, 1332 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000).

Under the arbitrary or capricious standard of review, an agency's decision must be sustained if it has a rational basis.  Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co. (State Farm), 463 U.S. 29, 43 (1983).  "The arbitrary and capricious standard applicable here is highly deferential.  This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  Advanced Data Concepts, 216 F.3d at 1058 (citing Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)).  In particular, the reviewing court may not substitute its judgment for that of the agency.  State Farm, 463 U.S. at 43.  The question for the court is not whether the agency is correct or whether the court would have reached the same conclusion as the agency, but whether there was a reasonable basis for the agency's actions.  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) ("If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))).

Under the APA standard of review, as applied in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and now under the ADRA, "a bid award may be set aside if either:  (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  Impresa, 238 F.3d at 1332.  Challenges to decisions on the basis of a violation of a regulation or procedure "must show a clear and prejudicial violation of applicable statutes or regulations."  Id. at 1333 (internal quotation and citation omitted).

2.      The Plaintiff Must Establish Prejudice

In order to prevail in a bid protest, the plaintiff must demonstrate both that an error occurred and that such error was prejudicial.  Data Gen. Corp. v. Johnson, 78 F.3d 1556,

1562 (Fed. Cir. 1996) (citations omitted); see Alfa Laval Separation, Inc. v. United States (Alfa Laval), 175 F.3d 1365, 1367 (Fed. Cir. 1999). If the court finds that there is no error, there is no prejudice and the government's decisions must be left undisturbed. Alfa Laval, 175 F.3d at 1367. Furthermore, "non-prejudicial errors in a bid process do not automatically invalidate a procurement." Labatt Food Serv. v. United States, 577 F.3d 1375, 1380 (Fed. Cir. 2009) (internal citations omitted). To establish prejudice in the context of a pre-award bid protest, the plaintiff must show "that an unreasonable agency decision 'created a non-trivial competitive injury which can be redressed by judicial relief.'" Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1363 (Fed. Cir. 2009) (quoting WinStar Commc'ns, Inc. v. United States, 41 Fed. Cl. 748, 763 (1998)).

      B.      Motions for Judgment on the Administrative Record

Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC) provides for judgment on the administrative record "[w]hen proceedings before an agency are relevant to a decision in a case" before the court. RCFC 52.1(a). RCFC 52.1 does not address the standards and criteria to be applied in cases decided pursuant to RCFC 52.1 because "[t]he standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases." RCFC 52.1 Rules Committee Note (2006). Accordingly, the standards of review and burdens of proof and persuasion are set by the terms of the applicable substantive law. See Part II.A supra.

      C.      Standard for Permanent Injunctive Relief

In the bid protest context, the Tucker Act permits the court to "award any relief that the court considers proper, including . . . injunctive relief." 28 U.S.C. § 1491(b)(2). "'Establishing legal and prejudicial error does not automatically translate into injunctive relief.'" IDEA Int'l, Inc. v. United States, 74 Fed. Cl. 129, 137 (2006) (quoting Cubic Defense Sys., Inc. v. United States, 45 Fed. Cl. 450, 473 (1999)). To obtain a permanent injunction, a plaintiff must succeed on the merits and show by a preponderance of the evidence: "(1) that it will suffer irreparable harm if injunctive relief is not awarded; (2) that granting the relief serves the public interest; and (3) that the harm to be suffered by it outweighs the harm to the Government and third parties." United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998) (citing FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)); see Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327 (Fed. Cir. 2008); IDEA Int'l, 74 Fed. Cl. at 137.

III.     Discussion

Plaintiff and defendant disagree on two issues: (1) whether the Solicitation

contains sufficient information about quantities to allow offerors to bid intelligently and to allow the Agency to evaluate the submitted bids on a common basis; and (2) whether FAR 15.404-1(g), which addresses unbalanced pricing, is applicable to their dispute.

> A.   The Amount of Information Given to Offerors in the Solicitation is Sufficient for Offerors to Bid Intelligently and for the Navy to Evaluate Proposals on a Common Basis

Plaintiff alleges that for targeted lots, the Navy fails to disclose the quantities of specific items that will be used by the agency to calculate each offeror's evaluated price and argues that this non-disclosure is unreasonable because it prevents offerors from bidding intelligently and prevents the Navy from evaluating bids on a common and equal basis. Pl.'s Mem. 25. Defendant argues that "the Navy's use of the LOGREQs provides a common basis for evaluating the bids of the various offerors." Def.'s Mot. 14. The court agrees with defendant: the Solicitation provides sufficient information to allow offerors to bid intelligently and to allow the agency to meaningfully evaluate competing proposals.

Agencies are required to consider cost to the government in evaluating competitive proposals. Competition in Contracting Act, 10 U.S.C. § 2305(a)(3)(A)(ii). A solicitation's "[e]valuation factors and subfactors must . . . [s]upport meaningful comparison and discrimination between and among competing proposals." FAR 15.304(b)(2). The agency has discretion to "decide upon some appropriate, reasonable method for proposal evaluation," but it "may not use an evaluation method that produces a misleading result." Aalco Forwarding, Inc., B-277241 et al., 1998 WL 121352, at *7 (Comp. Gen. Mar. 11, 1998).[17] The agency's price evaluation method "must include some reasonable basis for evaluating or comparing the relative costs of proposals, so as to establish whether one offeror's proposal would be more or less costly than another's." Id.

"As a general rule, offerors must be given sufficient detail in an RFP to allow them to compete intelligently and on a relatively equal basis." Interface Flooring Sys., Inc., B-225439, 1987 WL 101567, at *5 (Comp. Gen. Mar. 4, 1987). When a solicitation lacks

---

[17]"Given the diverse factual scenarios that appear before the Government Accountability Office (GAO), its decisions traditionally have been accorded a high degree of deference by the courts, particularly those involving bid protests." Hawaiian Dredging Constr. Co., Inc. v. United States, 59 Fed. Cl. 305, 311 (2004); see E.W. Bliss Co. v. United States, 33 Fed. Cl. 123, 135 (1995), aff'd, 77 F.3d 445 (Fed. Cir. 1996). While GAO decisions are not binding upon this court, they may be considered as "'expert opinion, which [the court] should prudently consider.'" Thompson v. Cherokee Nation of Okla., 334 F.3d 1075, 1084 (Fed. Cir. 2003) (quoting Delta Data Sys. Corp. v. Webster, 744 F.2d 197, 201 (D.C. Cir. 1984)).

sufficient detail and "permits each offeror to define the specification for itself, and to the extent they do so differently, the offerors are not competing on an equal basis." Id.

"In a solicitation for an IDIQ contract, where an agency's needs are indeterminate at the time of contracting, a competitive price evaluation of competing proposals presents a particular challenge." Linc Gov't Servs., LLC v. United States, No. 10-375, 2010 WL 4484021, at *39 (Fed. Cl. Oct. 22, 2010). "A solicitation for an indefinite quantity of services must contain estimates, since without them the agency cannot compare proposals on an equal basis . . . [and] without estimates, vendors lack the information necessary for pricing their services intelligently." West Coast Copy, Inc., B-254044 et al., 1993 WL 476970, at *5 (Comp. Gen. Nov. 16, 1993). "However, . . . in certain circumstances, it may not be possible for the contracting agency to predict its needs accurately. In such circumstances, . . . the solicitation should be based upon the best available information." Canon U.S.A., Inc., B-213544, 1984 WL 46532, at *3 (Comp. Gen. Aug. 20, 1984) (citing Klein-Sieb Adver. & Pub. Relations, Inc., B-200399, 1981 WL 23324 (Comp. Gen. Sept. 28, 1981); Gibson & Cushman Dredging Corp., B-194902, 1980 WL 17120 (Comp. Gen. Feb. 12, 1980)). "Where estimates for various types of required services are not reasonably available, an agency may establish a reasonable hypothetical, consistent with the RFP requirements, to provide a common basis for comparing the relative costs of the proposals." Aalco Forwarding, Inc., B-277241 et al., 1998 WL 121352, at *7 (Comp. Gen. Mar. 11, 1998).

The Navy is permitted to develop and use LOGREQs "to provide a common basis for comparing the relative costs of the proposals." See Aalco Forwarding, Inc., B-277241 et al., 1998 WL 121352, at *7 (Comp. Gen. Mar. 11, 1998). Although the Navy provides offerors with historical data regarding port visits, see AR Tabs 1.02-1.05, at 465-1521, and its methodology for creating the actual targeted LOGREQs, see AR Tab 30, at 11735-41, the Navy does not provide the actual targeted LOGREQs to offerors, see AR Tab 30, at 11735-41. As plaintiff states, based on the information provided to offerors, "It is not possible for offerors to determine the mix of line items and quantities for each line item in the undisclosed Actual Targeted LOGREQs." Pl.'s Mem. 13.

However, defendant is correct that the "Navy's use of the LOGREQs provides a common basis for evaluating the bids of the various offerors." Def.'s Mot. 14. The Navy is not required to disclose its sample LOGREQs to offerors, nor is it required to disclose which line items and quantities for each line item for the targeted lots the agency will be using to determine the total evaluated price.[18] The Navy is only required to "provide

---

[18]The Navy's non-disclosure of its actual targeted LOGREQs addresses the government's
continue...

sufficient information in a solicitation to enable offerors to compete intelligently and on a relatively equal basis." Braswell Servs. Grp., Inc., B-278521, 1998 WL 48706, at *2 (Comp. Gen. Feb. 9, 1998) (citing State Mgmt. Servs., Inc., B-251715, 1993 WL 145254, at *4 (Comp. Gen. May 3, 1993)). For the following reasons, the court finds that the Navy has met this obligation.

The Solicitation provides two different levels of detail as a basis on which offerors are to construct their bids. Some of the line items on the price schedules contain estimated quantities, whereas the remainder of the line items do not. See AR Tab 28.01, at 11339-447.

For the line items in the price schedules that contain quantities, offerors have sufficient information to bid intelligently. Offerors do not need the LOGREQs to bid intelligently on prices because, for the line items that contain quantities in the price schedules, offerors are able to use those estimated quantities to determine their proposed unit prices. Furthermore, the Solicitation provides sufficient information for the agency to evaluate proposals on a common basis. All offerors are given the same price schedules, so they all have the same information on estimated quantities upon which to base their prices. The Navy will apply each offeror's proposed unit prices for targeted lots to the same actual targeted LOGREQs to determine each offeror's total evaluated price. AR Tab 30, at 11639. Because it is using the same method for determining each offeror's total evaluated price, the Navy is evaluating proposals on a common basis.

For the line items in the price schedules that do not contain quantities, the Solicitation provides less, but nonetheless sufficient, information to allow offerors to bid intelligently and to allow the agency to evaluate proposals on a common and equal basis. Various line items have no estimated quantity because the Navy "does not have information indicating there was a demand for the item during the period covered by the historical information . . . but recognizes that there may be a requirement for the item during the term of the contract." AR Tab 11, at 5910.

---

[18]...continue
legitimate concern "that if it were to share the LOGREQs with offerors, the offerors would propose higher prices for the line items that they knew would not contribute to the total evaluated price." Def.'s Mot. 21. The Navy's decision not to disclose the targeted LOGREQs shifts some of the risk of performance from the Navy to the bidders, but the FAR does not require the agency to assume performance risk rather than the contractor. AshBritt, Inc., B-297889 et al., 2006 WL 707305, at *14 (Comp. Gen. Mar. 20, 2006) (citing AT&T Corp., B-270841 et al., 1996 WL 276415 (Comp. Gen. May 1, 1996)); Braswell Servs. Grp., Inc., B-278521, 1998 WL 48706, at *2 (Comp. Gen. Feb. 9, 1998).

This case is similar to Canon U.S.A., Inc., B-213544, 1984 WL 46532 (Comp. Gen. Aug. 20, 1984).[19]  The solicitation called for supply for an indefinite quantity of typewriters to government agencies located overseas but did not give any estimates of the number of typewriters that would be purchased.  Canon U.S.A., Inc., B-213544, 1984 WL 46532, at *3 (Comp. Gen. Aug. 20, 1984).  The agency did not provide quantity estimates because "the procurement [was] the first attempt by [the agency] to cover overseas activities' typewriter requirements.  Therefore, . . . neither estimates of future needs nor records of past purchases were available for inclusion in the RFP."  Id.  The Government Accountability Office (GAO), found that a solicitation should usually contain estimates, but recognized that "in certain circumstances, it may not be possible for the contracting agency to predict its needs accurately.  In such circumstances, . . . the solicitation should be based upon the best available information."  Id. (citing Klein-Sieb Adver. & Pub. Relations, Inc., B-200399, 1981 WL 23324 (Comp. Gen. Sept. 28, 1981); Gibson & Cushman Dredging Corp., B-194902, 1980 WL 17120 (Comp. Gen. Feb. 12, 1980)).  In this case, the Navy has not provided estimates for various line items because "the [g]overnment does not have information indicating there was a demand for the item during the period covered by the historical information at the [S]olicitation's Attachment 3."  AR Tab 11, at 5910.

Plaintiff argues that bidders lack sufficient information to bid intelligently because without estimated quantities for each line item, "offerors have to guess as to what the Agency's requirements will be, with the overall estimate of minimum of $100,000 to a maximum of an offeror's quoted prices as their only guidance."  Pl.'s Mem. 31 (citations and internal quotations omitted).  However, bidders have more information on quantities than just the minimum and maximum quantities.  Offerors know that the supplies and services that have "No Estimate" in the estimated quantity column of the price schedules have not been ordered by the Navy at that lot in the two and one half years prior to the date the Solicitation was first issued.  AR Tab 11, at 5910; AR Tab 38.04, at 17622.  In other words, offerors know that the Navy did not order a particular supply or service at

---

[19]Canon U.S.A., Inc., B-213544, 1984 WL 46532, at *3 (Comp. Gen. Aug. 20, 1984) involved a solicitation for a requirements contract.  A requirements contract is similar to an indefinite-quantity contract in that they both are variable quantity contracts.  See John Cibinic, Jr. & Ralph C. Nash, Jr., Formation of Government Contracts 1181, 1238 (3d ed. 1998).  "Variable quantity contracts obligate the contractor to furnish articles or services to be ordered by the Government within specified maximum amounts."  Id. at 1181.  "A requirements contract is a contract where one party promises to buy all or a designated part of its requirements from another party."  Id. at 1185.  An indefinite-quantity contract is one in which "the Government obligates itself to buy at least a stated minimum quantity of the goods or services, and the contract will also contain a maximum quantity beyond which the contractor is not bound."  Id. at 1238 (citing FAR 16.504(a)(1)).

that port or group of ports in fiscal years 2007 and 2008 and the first half of fiscal year 2009.  AR Tab 11, at 5910; AR Tab 38.04, at 17622.  Furthermore, the Navy orders from the same set of the thirty-three basic categories of supplies and services for each lot.  See AR Tab 28.01, at 11339-447.  If offerors desire more information about the estimated quantity of a particular line item, offerors are able to look at similar lots to see the estimated quantity of that line item and price the line items without estimates accordingly.  When the agency lacks sufficient information to provide offerors with realistic estimated quantities, it is not unreasonable for the agency to base the solicitation "upon the best available information," Canon U.S.A., Inc., B-213544, 1984 WL 46532, at *3 (Comp. Gen. Aug. 20, 1984), and rely on the "professional expertise and business judgment" of the bidders to fill in the missing information for themselves, AshBritt, Inc., B-297889 et al., 2006 WL 707305, at *14 (Comp. Gen. Mar. 20, 2006) (citing AT&T Corp., B-270841 et al., 1996 WL 276415  (Comp. Gen. May 1, 1996)).

Plaintiff also argues that "by requiring offerors to submit fixed prices for line items without information about quantities for bidding purposes, the Agency lacks a common basis to evaluate price proposals."  Pl.'s Mem. 25.  However, an estimated quantity for these line items is not necessary for the Navy to evaluate bids on an equal basis because the Navy instructs offerors to provide unit prices for each line item, not total prices.  See AR Tab 28.01, at 11339-447; see also AR Tab 30, at 11491 (providing the definitions for unit abbreviations used in the price schedules); AR Tab 30, at 11639 (describing the Navy's price evaluation methodology for targeted lots).  In other words, offerors are able to bid intelligently and compete equally on these items because offerors are not required to first estimate a quantity and then determine a total price based on that quantity.  Instead, offerors are instructed to provide a unit price for each line item.[20]  See AR Tab

---

[20]At oral argument, Glenn Defense argued for the first time that "there is an efficiency in economics.  There is efficiency the more quantity you have, a better opportunity to lower your price and still cover your costs.  At a lower quantity, sometimes you have to charge a higher price to cover your costs and generate a sufficient profit."  See Oral Argument at 10:55:36-10:56:20.  The court finds this argument, which Glenn Defense did not raise in its complaint or briefing, to be waived because it was untimely raised.  See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1320 n.3 (Fed. Cir. 2005) (finding an issue not properly raised in an opening brief to be waived); Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990) ("[W]e see no reason to depart from the sound practice that an issue not raised by an appellant in its opening brief . . . is waived.").

The court notes that while knowledge of estimated quantities for line items is potentially beneficial to bidders, the law does not require that bidders have the opportunity to discount prices based on quantity.  The Navy is only required to "provide sufficient information in a solicitation
continue...

30, at 11639.

Plaintiff fails to cite to any binding legal authority for its arguments; instead, plaintiff primarily relies on three bid protests from the GAO for support for its argument that the Solicitation fails to provide sufficient information, all cases that are distinguishable from this case on these facts.[21] In the solicitation at issue in Fabrics Plus, Inc., B-218546, 1985 WL 52925, at *1 (Comp. Gen. July 12, 1985), "[t]he only indication of quantity was a statement in the original solicitation indicating that total orders would range from $200,000 to $1,500,000." In West Coast Copy, Inc., B-254044 et al., 1993 WL 476970, at *3 (Comp. Gen. Nov. 16, 1993), bidders submitted prices based on different pricing methodologies, so "[w]hen the [agency] attempted to compare the vendors' submissions, it found that a line-by-line comparison of the four quotations under consideration was impossible, because of the various additional services offered by the vendors and because many of the proposed costs were stated as 'at cost,' rather than by dollar amount." In Neals Janitorial Service, B-276625, 1997 WL 366781, at *1, *3 (Comp. Gen. July 3, 1997), the agency issued a solicitation for janitorial services for a group of buildings and, rather than providing estimates of a large portion of the workload, the agency provided floor plans with the solicitation and allowed offerors to tour four of the 171 buildings to be serviced. Because the break rooms had to be serviced under the contract but were not included in the floor plans, the agency directed offerors to "use [their] best judgment to determine the number of break[]rooms." Id. at *2.

Defendant's Solicitation is readily distinguishable from those addressed in the GAO opinions on which plaintiff relies. By including estimated quantities for many of the line items in the price schedules and spreadsheets containing historical data of port visits, see AR Tab 28.01, at 11339-447; see also AR Tabs 1.02-1.05, at 465-1521, the Navy has provided offerors with significantly more information than the Fabrics Plus

---

[20]...continue
to enable offerors to compete intelligently and on a relatively equal basis." Braswell Servs. Grp., Inc., B-278521, 1998 WL 48706, at *2 (Comp. Gen. Feb. 9, 1998) (citing State Mgmt. Servs., Inc., B-251715, 1993 WL 145254, at *4 (Comp. Gen. May 3, 1993)).

[21]Plaintiff also relies on Interface Flooring Systems, Inc., B-225439, 1987 WL 101567, at *5 (Comp. Gen. Mar. 4, 1987), in which the solicitation at issue concerned ambiguous specifications regarding the type of flooring to be installed. Plaintiff argues that an ambiguity in specifications and an ambiguity in quantities both can affect how offerors determine prices, see Pl.'s Reply 19-20; however, the defect in the Interface Flooring Systems solicitation was that bidders did not know and could not determine from the solicitation what product was being procured, see Interface Flooring Sys., Inc., B-225439, 1987 WL 101567, at *5 (Comp. Gen. Mar. 4, 1987).

solicitation that merely listed a price range, 1985 WL 52925, at *1, and the Neals Janitorial Service solicitation that allowed bidders to take a limited tour of the facilities to be serviced, 1997 WL 366781, at *2-3. When the Navy is unable to provide an estimated quantity in the price schedules owing to a lack of historical data, the Navy is nevertheless able to evaluate the proposals on a common and equal basis because the Solicitation requires all offerors to submit unit prices for each line item. AR Tab 30, at 11639. The Navy thereby also avoids the problem in West Coast Copy, where bidders submitted prices based on different pricing methodologies. See West Coast Copy, Inc., B-254044 et al., 1993 WL 476970, at *3 (Comp. Gen. Nov. 16, 1993).

Because the Navy has provided sufficient information for offerors to bid intelligently and for the Navy to evaluate offers on a common basis, the Navy's price evaluation methodology for targeted lots is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). It is therefore unnecessary for the court to determine whether Glenn Defense suffered prejudice in the form of a "non-trivial competitive injury which can be redressed by judicial relief,'" Weeks Marine, 575 F.3d at 1363.

B.   FAR 15.404-1(g) is Not Applicable to the Parties' Dispute

Plaintiff contends that the Navy's "decision to withhold the Actual Targeted LOGREQs to address the risk of unbalanced pricing is both outside the scope of its discretion under FAR 15.404-1(g) and unreasonable." Pl.'s Mem. 26. Defendant correctly argues that "FAR 15.404-1(g) is entirely irrelevant," Def.'s Mot. 20, because "FAR 15.404-1 pertains to 'Proposal analysis techniques' and does not apply to the design of a solicitation," Def.'s Reply 12.

FAR 15.404-1(g) addresses the issue of unbalanced pricing. The text of FAR 15.404-1(g) makes clear that the FAR addresses the agency's price analysis of offers, and not the language or structure of the solicitation. "Unbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more contract line items is significantly over or understated as indicated by the application of cost or price analysis techniques." FAR 15.404-1(g)(1) (emphasis added). The FAR further states that "[a]ll offers with separately priced line items or subline items shall be analyzed to determine if the prices are unbalanced." FAR 15.404-1(g)(2). In other words, the issue of unbalanced prices is a post-submission issue and is not applicable to the current pre-award dispute regarding the language of the Solicitation.

C.   Permanent Injunctive Relief Not Warranted

To obtain a permanent injunction, a plaintiff must succeed on the merits and show

19

by a preponderance of the evidence: "(1) that it will suffer irreparable harm if injunctive relief is not awarded; (2) that granting the relief serves the public interest; and (3) that the harm to be suffered by it outweighs the harm to the Government and third parties." United Int'l Investigative Servs., 41 Fed. Cl. at 323 (citing FMC Corp., 3 F.3d at 427). Because plaintiff has not succeeded on the merits of its case, it is unnecessary for the court to determine whether Glenn Defense has established the remaining three factors.

IV.     Conclusion

For the foregoing reasons, the court DENIES plaintiff's Motion and GRANTS defendant's Motion. The Clerk of Court is directed to ENTER JUDGMENT in favor of defendant. No costs.

IT IS SO ORDERED.

> s/ Emily C. Hewitt
> EMILY C. HEWITT
> Chief Judge